LAW OFFICE OF RONALD L. KUBY
119 West 23rd Street, Suite 900
New York, New York 10011
(212) 529-0223

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------x

TAINA CASTRO, HECTOR TORRES,                        )
VICTOR J. TORRES, and VICTOR M. TORRES,
                                                    )       **COMPLAINT**
                        Plaintiffs,
                                                    )       11 CV 3511 (HB)
              -against-
                                                    )       **A JURY TRIAL**
THE CITY OF NEW YORK, POLICE SERGEANT                       **IS DEMANDED**
BERTHA TORRES, DETECTIVE JARROD LASKY,              )
Shield No. 1545, DETECTIVE BRIAN MARTIN, Shield
No. 6991, POLICE OFFICER ANDREW KAMNA, Shield )            ECF CASE
No. 24865, POLICE OFFICER WAYNE OLIVEIRA,
Shield No. 28741, POLICE OFFICER RYAN               )
RODRIGUEZ, Shield No. 15722, POLICE OFFICER
ERICK FLORES, POLICE OFFICER JANE DOE, and          )
POLICE OFFICERS JOHN DOE 1-15.
                                                    )
                        Defendants.
-------------------------------------------------------------------x

## PRELIMINARY STATEMENT

1.      This is a civil rights action brought pursuant to 42 U.S.C. §§ 1983 and 1988, and

the Fourth and Fourteenth Amendments to the United States Constitution, alleging misconduct

by the CITY OF NEW YORK and several New York City Police Officers. Plaintiffs seek

compensatory and punitive damages, an award of costs, interest and attorney's fees, and such

other and further relief as this Court deems just and proper.

## JURISDICTION AND VENUE

2.    Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331 and 1343(a)(3), this being an action seeking redress for the violation of the Plaintiffs' constitutional and civil rights.

3.    Venue in this District is proper under 28 U.S.C. § 1391 in that Defendant CITY OF NEW YORK is administratively located within the Southern District of New York.

## JURY TRIAL DEMANDED

4.    Plaintiffs demand a trial by jury on each and every one of their claims as pleaded herein.

## PARTIES

5.    Plaintiffs VICTOR J. TORRES and TAINA CASTRO are and were at all times relevant residents of the State of New York.  Plaintiffs VICTOR M. TORRES and HECTOR TORRES are residents of the State of Florida.

6.    At all times relevant to this complaint, Defendants BERTHA TORRES, JARROD LASKY, BRIAN MARTIN, ANDREW KAMNA, WAYNE OLIVEIRA, RYAN RODRIGUEZ, ERICK FLORES, Police Officer JANE DOE, and JOHN DOE Police Officers 1-15 were duly appointed and acting officers, servants, employees and agents of the New York City Police Department.  They are sued in their individual and official capacities.  At all times relevant they were acting in their capacity as a New York City police officer, and were operating under color of the laws, statutes, ordinances, regulations, polices, customs, and usages

of the State of New York and the New York City Police Department, a municipal agency of

Defendant CITY OF NEW YORK.

      7.    Defendant CITY OF NEW YORK is a municipal corporation and the public employer

of the said officers.  It is authorized by law to maintain a police department, for which it retains

responsibility.

**STATEMENT OF FACTS SPECIFIC TO EACH OCCURRENCE**

**THE EVENTS OF DECEMBER 3, 2009**

      8.    On December 3, 2009, the Torres family went shopping for sneakers at V.I.M., a

retail store located at 1750 Pitkin Avenue, Brooklyn, New York.  Victor J. Torres and his

girlfriend, Taina Castro, brought their three young children, ages 5 years, 3 years, and 3 months,

to the store.  Victor's father, Victor M. Torres, and his uncle, Hector Torres, also accompanied

the young couple.

      9.    The family, with their parade of strollers, entered the store at around 2:05 p.m.

Inside, Hector sat beside the parked strollers, entertaining the children while the rest of the

family chatted and perused the shelves.

      10.    At approximately 2:12 p.m., their shopping was interrupted by the commotion of a

woman in the store being apprehended by three uniformed police officers – Sergeant BERTHA

TORRES, Officer ANDREW KAMNA, and JOHN DOE 1.  Upon information and belief, the

officers were arresting the woman, one Ciara Martinez, for shoplifting.

      11.    The woman squirmed as the officers forced her hands behind her back.  In trying

to restrain the woman, the officers pulled her down an aisle toward the side of the store, only a

few feet from the Torres family and their strollers.  The woman continued to struggle, as

3

KAMNA grabbed her by the neck, then by the arm, and TORRES and DOE 1 pushed her to the ground. On the floor, the scuffle continued. Standing as a protective barrier between the strollers and the scuffle, Victor J. and Victor M. observed the incident up-close.

12.    Disturbed by the violent and disproportionate force used by the officers in arresting the woman, Victor J. and Victor M. began discussing their observations with one another. Speaking their native language, Spanish, the men stated in sum or substance, "This is wrong. They are using unnecessary force." (English translation).

13.    Defendant TORRES, who apparently understood the words spoken by Victor J. and Victor M., turned toward the men and stated, in sum or substance: "If you don't like the way we do the arrests, you shouldn't have called us."

14.    Victor J. responded, in sum or substance: "We did not call you. We don't work here." Officer TORRES replied, "Mind your own fucking business then."

15.    As the officers proceeded to escort the handcuffed woman toward the exit of the store, Officer TORRES yelled, "That's the problem with these fucking Puerto Ricans."

16.    Victor J. responded to TORRES: "You must be Puerto Rican too; you understood us."

17.    Upon information and belief, Officer KAMNA thought that the words had come from Victor M. KAMNA turned back and accosted Victor M.

18.    As Officer TORRES exited the store with the handcuffed woman, Officer KAMNA grabbed Victor M.'s shoulder with one hand and his wrist with the other. KAMNA twisted Victor's arm behind his back, stating, "You're talking a lot of shit."

19. Victor J. explained to KAMNA that his father had nothing to do with this and that the officer [TORRES] had disrespected them. Referring to Victor M., KAMNA repeated, in sum or substance, "He's talking trash."

20. Victor J. then sought help from Police Officer DOE 1, who had been observing the dispute from a few feet away. He asked DOE 1, "What's wrong with him [KAMNA]? We've got nothing to do with this."

21. Hector also stated that they had done nothing wrong. Officer KAMNA temporarily released his grip on Victor M. while yelling and pointing his finger at Hector. He threatened Hector, "Step back before I arrest you too."

22. KAMNA then grabbed Victor J. by the arm.

23. Officer DOE 1 watched, but did nothing to stop KAMNA.

24. Hector continued to protest KAMNA's actions. With his left arm, KAMNA shoved Hector toward the wall. Hector, Victor J. and Victor M. all stumbled backward, as KAMNA intentionally swung his right arm, punching Victor J. in the face.

25. Officer KAMNA charged at Victor M. and tackled him to the ground, where he punched and pummeled him.

26. When Victor J. tried to pull KAMNA off of his father, DOE 1 lifted Victor J. and threw him violently against the wall. DOE 1 wrapped his hand around the front of Victor's neck and pinned him to the wall, cutting off his airway while holding him by the throat.

27. Victor's five-year-old son stood less than five feet away, watching as the police officers choked his father and beat his grandfather.

5

28. Taina Castro ran from across the store and tried to pick her father-in-law up off the floor. KAMNA shoved her violently, and Taina retreated.

29. Victor J. escaped, briefly, the grasp of DOE 1 and tried once more to help his father, who was on the floor being straddled by KAMNA. KAMNA pushed Victor J. away, and DOE 1 again restrained him.

30. Immediately thereafter, three additional police officers arrived at the scene. Officer JOHN DOE 2 assisted KAMNA in hand-cuffing and arresting Victor M.

31. JOHN DOE 3 and JOHN DOE 4 went to assist DOE 1, who had Victor J. pinned against the wall.

32. From behind, DOE 3 wrapped his arms around Victor J. and forced him to his knees. DOE 1, DOE 3, and DOE 4 held Victor down.

33. On the ground, the officers grabbed Victor J.'s arms, pulled them behind Victor's back, and forcefully lifted them upward into a hyperextended position.

34. In severe pain, Victor J. implored the officers to stop, pleading "I'm not resisting. You're hurting me!" He informed the officers that surgery had recently been performed on his shoulder, and that they were hurting it. Despite Victor's pleas, the officers continued to contort his arms, causing Victor J. to endure protracted excruciating pain.

35. DOE 3 gripped Victor J. by the neck, maintaining a choke hold while DOE 1 bound Victor's wrists behind his back with metal handcuffs.

36. In affixing the handcuffs, DOE 1 intentionally tightened the cuffs excessively, exacerbating the pain already suffered by Victor J.

37. Several more officers arrived at the scene.

6

38. Victor J. and Victor M. were brought outside and each was placed in a separate police vehicle.

39. While Victor J. sat in the car, he was approached by DOE 5, who appeared to be an NYPD Sergeant. DOE 5 asked Victor J. what happened, but as Victor tried telling DOE 5 what had occurred DOE 5 kept cutting him off. Victor J. then pointed to DOE 1, who was standing nearby, and stated, "Ask him! He was there. I asked him to help."

40. At that point, DOE 5 turned to DOE 1 and asked him what happened. DOE 1 responded, "I didn't know what to do. I didn't know who to help – them or my partner." DOE 5 scolded DOE 1: "Just shut the fuck up and go get in the van!"

41. DOE 5 then turned back to Victor J. and told him, "I've seen thousands of cases like this. You go to court, it gets thrown out, and bygones will be bygones." DOE 5 shut the car door.

42. Victor J. and Victor M. were removed to the 73rd precinct. Defendant RYAN RODRIGUEZ was the "arresting officer" for both Victor J. and Victor M., although other defendants herein directed and/or effectuated the arrests.

43. While at the 73rd precinct stationhouse, Victor J. asked to use the restroom. Officer ERICK FLORES opened the cell door and walked Victor J. to an area around the side of the cell where they could not be seen by the other detainees.

44. FLORES instructed Victor J. to put his hands behind his back, and put a handcuff on one of Victor's wrists. He then stated, "The officer you assaulted was my friend." Victor replied, "There are two sides to the story. He assaulted me."

7

45. Officer FLORES responded, "You're about to see my side of the story." FLORES bent Victor's arm upward, hyperextending it behind Victor's back. While holding Victor's arms, FLORES slammed Victor's face against the wall.

46. Victor J. screamed for help.

47. As other officers came to see what the commotion was about, FLORES pinned Victor J. against the wall, holding his forearm against Victor's throat, choking him. An officer told FLORES to let Victor go, and, eventually, FLORES escorted Victor J. back to his cell.

48. Victor J. and Victor M. were later transported from the 73rd precinct to Brooklyn Central Booking.

49. On December 4, 2009, after approximately 30 hours in police custody, Victor J. Torres and Victor M. Torres appeared before a judge and each was released on his own recognizance.

50. A criminal complaint charged Victor J. and Victor M. with Assault in the Second Degree, a class D felony, in addition to several misdemeanor and violation counts, even though they were the victims, not the assailants, of the assault.

51. The felony charges were later dismissed, and, on July 15, 2010, the case was adjourned in contemplation of dismissal. It has since been dismissed.

52. Taina Castro and Hector Torres were not arrested on December 3, 2009, but officers detained them inside the store for a period of time before permitting them to leave.

53. After Victor J. and Victor M. were removed from the store, Hector was placed in handcuffs near the front of the store.

54. Taina was crying, "Why did you do this to my family?" Sergeant TORRES threatened to have Taina arrested if she did not "shut up." When Taina asked "You're going to arrest me for talking," Sgt. TORRES ordered that she be put in cuffs. Officer JOHN DOE 6 handcuffed Taina.

55. As Taina cried, TORRES threatened to have her children placed in the custody of the Administration for Children's Services (ACS). TORRES told Taina, in sum or substance: "Just say something to me. All I want to do is take your kids. Give me reason to have your kids taken." The other officers began taunting Taina, asking her children "you want a ride in the police car?"

56. At some point DOE 5 entered the store and ordered the officers to release Taina and Hector. Taina and Hector were permitted to leave.

57. The brutality occasioned upon Plaintiffs by Defendants was captured on video by the store's surveillance cameras. A copy of the surveillance footage is appended hereto.

58. The conduct of the defendant officers, in restraining, arresting, and imprisoning Plaintiffs was totally without probable cause, and was done maliciously, falsely and in bad faith.

59. At all times during the events described above, the defendant police officers were engaged in a joint venture. The individual officers assisted each other in performing the various actions described and lent their physical presence and support and the authority of their office to each other during the said events.

60. As a result of the events alleged herein, and due directly to the actions taken by Defendants, Plaintiffs suffered and continue to suffer physical pain, emotional trauma, discomfort, humiliation, fear, anxiety and embarrassment, among other things.

**DECEMBER 6, 2009**

61. Three days after the incident at V.I.M., on December 6, 2009 at around 2:00 p.m. Defendant Police Officers DOE 1 and FLORES, accompanied by two other officers, arrived at the residence of Victor J. Torres, located at 1661 St. John's Place, Brooklyn. The door to the apartment was open.

62. The officers entered the apartment and grabbed Hector Torres, who was standing in the kitchen. Hector was placed under arrest.

63. Hector had not committed any crimes. The officers knowingly and intentionally arrested Hector without a warrant and absent probable cause or other legal justification due to their personal animus against Hector.

64. Hector was carried out of the apartment by two of the officers and removed to the 73rd precinct. Defendant RYAN RODRIGUEZ was, again, the "arresting officer."

65. Before leaving the premises, the officers searched the apartment.

66. Upon information and belief, the officers did not remove any property from the premises, but they left the apartment in a state of disarray. The beds and couch were flipped upside-down; clothes were dumped out of the drawers and covered the floor.

67. When Victor J. arrived home, he was informed of what had occurred by Taina Castro's grandmother, who was in the hall outside of the apartment at the time of the incident and observed the actions of the officers. Frightened and astonished by the appearance of the apartment, Victor J. called 9-1-1. He was put in contact with the District Attorney's Office, and two weeks later he and Taina met with an Assistant District Attorney and filed a report concerning the incident.

10

68. Upon information and belief, Hector remained in police custody for approximately thirty hours; then was brought before a judge.

69. A criminal complaint charged Hector with Disorderly Conduct and Obstructing Governmental Administration, based upon his alleged involvement in the December 3rd incident.

70. The case was adjourned in contemplation of dismissal on July 15, 2010. It has since been dismissed.

71. As a direct and proximate result of the actions taken by the individual defendants – in restraining, falsely arresting, and falsely imprisoning Hector – Hector suffered and continues to suffer physical pain, emotional trauma, mental anguish, humiliation and embarrassment, among other things.

72. Additionally, the conduct of the defendant officers, in entering and searching the Torres residence, was done without probable cause, consent or legal justification, was done maliciously and in bad faith, and violated the rights of Plaintiffs under the Fourth and Fourteenth Amendments to the United States Constitution.

### **FEBRUARY 3, 2010**

73. On February 3, 2010, Taina Castro was running errands with her husband and kids. They were walking along Pitkin Avenue when, at approximately 12:00 p.m., Taina realized she was being followed by Officers RYAN RODRIGUEZ and ANDREW KAMNA. Taina and Victor J. went into three stores; each time they exited a store they observed RODRIGUEZ and KAMNA standing outside.

11

74. Taina and Victor went inside a video game store on Pitkin Avenue. When they came outside, they observed a crowd of approximately one dozen officers on the sidewalk, including Sgt. TORRES, Officer RODRIGUEZ, OLIVEIRA, KAMNA, and DOE 1.

75. Sgt. TORRES approached Taina, grabbed her by the arm, and ordered her to turn around. TORRES told Taina she was being arrested for the December 3rd incident.

76. Sgt. TORRES instructed Officer JANE DOE to search Taina. JANE DOE frisked Taina, going through Taina's jacket, pockets, pants, and boots.

77. TORRES bound Taina's hands behind her back with metal handcuffs, and placed her in a police vehicle.

78. In affixing the handcuffs, Sgt. TORRES intentionally tightened the cuffs excessively, causing Taina to experience great physical pain and suffering.

79. Taina was transported to the 73rd precinct in a car driven by Officer KAMNA. Upon information and belief, Sgt. TORRES was in the front passenger seat and Officer OLIVEIRA sat in the back of the car with Taina. Taina's hands remained cuffed behind her back throughout the duration of the trip.

80. Although other officers directed and/or effectuated the arrest of Taina, Officer RYAN RODRIGUEZ was the "arresting officer."

81. The defendant officers knowingly and intentionally arrested Taina without a warrant and absent probable cause or other legal justification due to their personal animus against Taina.

82. Taina was falsely imprisoned for approximately thirty hours. While at the precinct, Taina had an allergic reaction which required medical attention.

12

83. Taina was eventually brought before a judge, who released her on her own recognizance. A criminal court complaint charged Taina with Obstructing Governmental Administration in the Second Degree, Attempted Assault in the Third Degree, and Harassment in the Second Degree, based upon her alleged involvement in the December 3rd incident.

84. The complaint also charged Taina with possession of marijuana offenses, based upon a marijuana cigarette that was allegedly found in Officer OLIVEIRA's patrol car on the date of Taina's arrest.

85. Taina had not committed any criminal acts.

86. The case was adjourned in contemplation of dismissal on July 15, 2010. It has since been dismissed.

87. At all times during the events described above, the defendant police officers were engaged in a joint venture. The individual officers assisted each other in performing the various actions described and lent their physical presence and support and the authority of their office to each other during the said events.

88. As a direct and proximate result of the actions taken by the defendant officers – in restraining, falsely arresting and falsely imprisoning Taina, and in using excessive and unnecessary force – Taina suffered and continues to suffer physical pain, emotional trauma, mental anguish, humiliation and embarrassment, among other things.

## JUNE, 2010

89. One day during or around the last week of June, 2010, Victor J., Victor M., and two of their neighbors were sitting outside in the back yard of their residence smoking cigarettes

and conversing with one another, when they were rushed by NYPD Officers JOHN DOE 7,

JOHN DOE 8, JOHN DOE 9, and JOHN DOE 10.

90. The officers were in plain clothes, but wore what appeared to be police badges around their necks.

91. The officers told Victor J. that he was under arrest, without explaining why.

92. The officers handcuffed Victor J. and proceeded to frisk Victor J., Victor M. and the two neighbors.

93. After finding nothing, the officers removed the cuffs from Victor J. and left.

94. The conduct of Officers DOE 7-10, in stopping Victor J. and Victor M., telling Victor J. he was under arrest, and searching the person of Victor J. and Victor M., was totally without probable cause, and was done maliciously, falsely and in bad faith.

95. The actions of the defendant officers violated the constitutional rights of Victor J. and Victor M. under the Fourth and Fourteenth Amendments to the United States Constitution to be free from unreasonable searches and seizures.

96. As a direct and proximate result of the acts alleged herein, Victor J. and Victor M. suffered and continue to suffer serious emotional injury, mental anguish, humiliation and embarrassment.

### SEPTEMBER 2, 2010

97. On September 2, 2010, at approximately 1:40 p.m., Victor M. was arrested again.

98. Victor M. was standing inside his son's apartment, located at 1661 Saint Johns Place, Brooklyn, with the door ajar, when Detectives BRIAN MARTIN and JARROD W. LASKY came to the apartment. The detectives were wearing plain clothes.

14

99. Upon information and belief, one of the detectives (either MARTIN or LASKY) waited by the door while the other entered the apartment, grabbed Victor M. by the arm, and dragged Victor out of the apartment into the hallway.

100. In the hallway, the detective pinned Victor M. against the wall with his left forearm and punched Victor in the stomach with his right arm. Victor M. had not been resisting in any way.

101. The detective punched Victor repeatedly until Victor collapsed to his knees.

102. The other detective (either MARTIN or LASKY) watched and did nothing to stop the assault.

103. While on the floor, the detective continued to punch Victor M. in the stomach and the chest, grabbed him by the neck, and threw him face-first against the ground.

104. Victor had just taken a pill which his doctor had prescribed to treat Victor's blood pressure.

105. MARTIN and LASKY handcuffed Victor's wrists behind his back. They accused Victor M. of possessing marijuana, and proceeded to frisk him.

106. When no contraband was found on Victor M., MARTIN and LASKY accused him of eating it. Victor M. was placed in a police van. Detective BRIAN MARTIN was the "arresting officer."

107. Victor M. did not commit any criminal acts. Shortly before the detectives assaulted him, Victor had swallowed a pill which was prescribed by his doctor to treat Victor's blood pressure.

15

108. During the arrest, Victor M. was struck in the chest several times, causing him to experience constant and excruciating chest pains, among other injuries. He complained of these chest pains to the detectives.

109. At some point, Victor M. was transported by the police to Bellevue Hospital Center. Upon information and belief, Victor M. was diagnosed with NSTEMI (Non-ST Segment Elevation Myocardial Infarction) and/or blunt cardiac trauma.

110. Victor M. remained in police custody throughout his hospital visit. Upon information and belief, Victor was taken to the 77th precinct upon being discharged from the hospital, and was later transferred to Central Booking.

111. After spending approximately thirty hours falsely imprisoned, Victor M. was brought before a judge. At Victor's arraignment, the case was adjourned in contemplation of dismissal.

112. The arrest of Victor M. was totally without probable cause, and was done maliciously, falsely and in bad faith.

113. As a direct and proximate result of the said acts of MARTIN and LASKY, Victor M. suffered and continues to suffer serious physical pain, emotional trauma, discomfort, humiliation, fear, anxiety and embarrassment, among other things.

## OCTOBER 18, 2010

114. On October 18, 2010 at approximately 6:15 p.m., Victor J. Torres was home with his father (Victor M.), his uncle (Hector Torres), and his three children when he heard a knock at the door. He ignored it.

16

115. After a few minutes, the knocking stopped but Victor J. heard what sounded like someone attempting to pry the door open.

116. Victor opened the door slightly and observed five men standing outside his apartment – JOHN DOE 11 -15. Each of the men was wearing a bulletproof vest; none were in uniform. Upon information and belief, they were undercover officers.

117. DOE 12 removed what appeared to be a badge and identified himself as a police officer, stating, in sum or substance, "I'm a cop. You're under investigation."

118. DOE 12 told Victor J. that he was not supposed to be living there and that he had been evicted.

119. Victor responded that he was living in the apartment lawfully. He explained to the officer, "We have a lease; it is under my wife's name."

120. Officer DOE 12 asked who was inside the apartment. Victor informed the officers that his father, his uncle, and his children were all there; his wife was not home.

121. Without Victor's consent, DOE 12 then pushed open the door and all five officers entered the apartment.

122. Victor asked the officers for paperwork. They had no papers, no warrant.

123. The officers proceeded to search the bedroom, where Victor's children were sitting, watching a movie. The children were noticeably frightened.

124. The officers searched the closet, the bathroom, and the kitchen, opening all of the kitchen cabinets.

125. DOE 12 asked Victor J. and Victor M. for identification. Victor J. produced the requested identification.

17

126. Victor J. asked, "What is this all about?"  The officers repeatedly stated, in sum or substance, "You are being investigated."

127. Victor J. further questioned why he was being investigated.  One officer responded, "Do you have an enemy?"  Victor replied that the only people he has a problem with are the officers from the 73rd precinct.  The officer confirmed, stating, in sum or substance, "You got beef with somebody."

128. The officers examined the identification of Victor J. and Victor M., took pictures, then returned the identification to Victor and walked out the door.

129. Because of the on-going pattern of harassment by the Police Officers of the 73rd precinct, the Torres family was forced to move out of the precinct.

## CAUSES OF ACTION

### CAUSES OF ACTION THAT ACCRUED ON DECEMBER 3, 2009

### FIRST CLAIM:  FALSE ARREST OF VICTOR M. TORRES

### DEPRIVATION OF RIGHTS UNDER THE FOURTH AND FOURTEENTH AMENDMENTS AND 42 U.S.C. §1983

130. Plaintiffs incorporate by reference the allegations set forth in each preceding paragraph as if fully set forth herein.

131. The conduct and actions of Defendants TORRES, KAMNA, RODRIGUEZ, DOE 1, DOE 2, and DOE 5 on December 3, 2009, acting under color of law, in arresting and detaining or causing the arrest and detention of Victor M. Torres without probable cause, was done intentionally, maliciously, with a deliberate indifference and/or with a reckless disregard for the natural and probable consequences of their acts, was done without lawful justification or reason,

18

and was designed to and did cause specific and serious physical and emotional pain and suffering in violation of Plaintiff's Constitutional rights as guaranteed under the Fourth and Fourteenth Amendments to the United States Constitution.

132. TORRES, KAMNA, RODRIGUEZ, DOE 1, DOE 2, and DOE 5 are liable for directly participating in the acts described herein and for failing to intervene to protect Victor M. from the illegal conduct of their fellow officers.

133. As a direct and proximate result of the foregoing, Victor M. Torres was deprived of his liberty, was subject to great humiliation and serious physical and emotional pain and suffering, and was otherwise damaged and injured.

**SECOND CLAIM: EXCESSIVE FORCE AS TO VICTOR M. TORRES**

**DEPRIVATION OF RIGHTS UNDER THE FOURTH AND FOURTEENTH AMENDMENTS AND 42 U.S.C. §1983**

134. Plaintiffs incorporate by reference the allegations set forth in each preceding paragraph as if fully set forth herein.

135. The conduct and actions of Officers KAMNA and DOE 1 on December 3, 2009, acting under color of law, in grabbing, striking, beating or otherwise assaulting and battering Victor M. Torres, was excessive and unreasonable, was done intentionally, willfully, maliciously, with a deliberate indifference and/or with a reckless disregard for the natural and probable consequences of their acts, was done without lawful justification or reason, and was designed to and did cause specific and serious physical and emotional pain and suffering in violation of Plaintiff's rights as guaranteed under 42 U.S.C. §1983, and the Fourth and Fourteenth Amendments to the United States Constitution.

19

136. KAMNA and DOE 1 are liable for directly participating in the acts described herein and for failing to intervene to protect Victor M. from the illegal conduct of their fellow officers.

137. As a direct and proximate result of the foregoing, Victor M. Torres was subjected to great physical and emotional pain and suffering, and was otherwise damaged and injured.

**THIRD CLAIM: FALSE ARREST OF VICTOR J. TORRES**

**DEPRIVATION OF RIGHTS UNDER THE FOURTH AND FOURTEENTH AMENDMENTS AND 42 U.S.C. §1983**

138. Plaintiffs incorporate by reference the allegations set forth in each preceding paragraph as if fully set forth herein.

139. The conduct and actions of Defendants TORRES, KAMNA, RODRIGUEZ, DOE 1, DOE 3, DOE 4, and DOE 5 on December 3, 2009, acting under color of law, in arresting and detaining or causing the arrest and detention of Victor M. Torres without probable cause, was done intentionally, maliciously, with a deliberate indifference and/or with a reckless disregard for the natural and probable consequences of their acts, was done without lawful justification or reason, and was designed to and did cause specific and serious physical and emotional pain and suffering in violation of Plaintiff's Constitutional rights as guaranteed under the Fourth and Fourteenth Amendments to the United States Constitution.

140. TORRES, KAMNA, RODRIGUEZ, DOE 1, DOE 3, DOE 4 and DOE 5 are liable for directly participating in the acts described herein and for failing to intervene to protect Victor J. from the illegal conduct of their fellow officers.

141. As a direct and proximate result of the foregoing, Victor J. Torres was deprived of his liberty, was subject to great humiliation and serious physical and emotional pain and suffering,

and was otherwise damaged and injured.

### FOURTH CLAIM:  EXCESSIVE FORCE AS TO VICTOR J. TORRES

### DEPRIVATION OF RIGHTS UNDER THE FOURTH AND FOURTEENTH AMENDMENTS AND 42 U.S.C. §1983

142. Plaintiffs incorporate by reference the allegations set forth in each preceding paragraph as if fully set forth herein.

143. The conduct and actions of Officers KAMNA, DOE 1, DOE 3 and DOE 4 on December 3, 2009, acting under color of law, in affixing the handcuffs to the wrists of Victor J. Torres in an excessively tight fashion, and in grabbing, striking, beating, choking or otherwise assaulting and battering Mr. Torres, was excessive and unreasonable, was done intentionally, willfully, maliciously, with a deliberate indifference and/or with a reckless disregard for the natural and probable consequences of their acts, was done without lawful justification or reason, and was designed to and did cause specific and serious physical and emotional pain and suffering in violation of Plaintiff's rights as guaranteed under 42 U.S.C. §1983, and the Fourth and Fourteenth Amendments to the United States Constitution.

144. KAMNA, DOE 1, DOE 3, and DOE 4 are liable for directly participating in the acts described herein and for failing to intervene to protect Victor J. from the illegal conduct of their fellow officers.

145. As a direct and proximate result of the foregoing, Victor J. Torres was subjected to great physical and emotional pain and suffering, and was otherwise damaged and injured.

### FIFTH CLAIM:  EXCESSIVE FORCE AS TO VICTOR J. TORRES

### DEPRIVATION OF RIGHTS UNDER THE FOURTH AND FOURTEENTH AMENDMENTS AND 42 U.S.C. §1983

146. Plaintiffs incorporate by reference the allegations set forth in each preceding paragraph as if fully set forth herein.

147. The conduct and actions of Officer ERICK FLORES, acting under color of law, in grabbing, striking, beating, choking or otherwise assaulting and battering Victor J. Torres at the 73rd precinct on December 3, 2009, was excessive and unreasonable, was done intentionally, willfully, maliciously, with a deliberate indifference and/or with a reckless disregard for the natural and probable consequences of his acts, was done without lawful justification or reason, and was designed to and did cause specific and serious physical and emotional pain and suffering in violation of Plaintiff's rights as guaranteed under 42 U.S.C. §1983, and the Fourth and Fourteenth Amendments to the United States Constitution.

148. As a direct and proximate result of the foregoing, Victor J. Torres was subjected to great physical and emotional pain and suffering, and was otherwise damaged and injured.

## SIXTH CLAIM: ILLEGAL SEIZURE OF TAINA CASTRO

### DEPRIVATION OF RIGHTS UNDER THE FOURTH AND FOURTEENTH AMENDMENTS AND 42 U.S.C. §1983

149. Plaintiffs incorporate by reference the allegations set forth in each preceding paragraph as if fully set forth herein.

150. The conduct and actions of Defendants TORRES and DOE 6, acting under color of law, in detaining and handcuffing or causing the detention of Taina Castro in V.I.M. on December 3, 2009, was without probable cause, was done intentionally, maliciously, with a deliberate indifference and/or with a reckless disregard for Plaintiff's rights, was done without lawful justification or reason, and violated Plaintiff's rights under the Fourth and Fourteenth Amendments

22

to the United States Constitution to be free from an unreasonable seizure of her person.

151. As a direct and proximate result of the foregoing, Taina Castro was deprived of her liberty, was subject to great humiliation, fear, embarrassment, anxiety and emotional pain and suffering, and was otherwise damaged and injured.

## SEVENTH CLAIM: ILLEGAL SEIZURE OF HECTOR TORRES

### DEPRIVATION OF RIGHTS UNDER THE FOURTH AND FOURTEENTH AMENDMENTS AND 42 U.S.C. §1983

152. Plaintiffs incorporate by reference the allegations set forth in each preceding paragraph as if fully set forth herein.

153. The conduct and actions of Defendant TORRES, acting under color of law, in detaining and handcuffing or causing the detention of Hector Torres in V.I.M. on December 3, 2009, was without probable cause, was done intentionally, maliciously, with a deliberate indifference and/or with a reckless disregard for Plaintiff's rights, was done without lawful justification or reason, and violated Plaintiff's rights under the Fourth and Fourteenth Amendments to the United States Constitution to be free from an unreasonable seizure of his person.

154. As a direct and proximate result of the foregoing, Hector Torres was deprived of his liberty, was subject to great humiliation, fear, embarrassment, anxiety and emotional pain and suffering, and was otherwise damaged and injured.

## CAUSES OF ACTION THAT ACCRUED ON DECEMBER 6, 2009

## EIGHTH CLAIM:  FALSE ARREST OF HECTOR TORRES

### DEPRIVATION OF RIGHTS UNDER THE FOURTH AND FOURTEENTH AMENDMENTS AND 42 U.S.C. §1983

155. Plaintiffs incorporate by reference the allegations set forth in each preceding paragraph as if fully set forth herein.

156. The conduct and actions of Defendants FLORES, RODRIGUEZ, and DOE 1 on December 6, 2009, acting under color of law, in arresting and detaining or causing the arrest and detention of Hector Torres without a warrant or probable cause, was done intentionally, maliciously, with a deliberate indifference and/or with a reckless disregard for the natural and probable consequences of their acts, was done without lawful justification or reason, and was designed to and did cause specific and serious physical and emotional pain and suffering in violation of Plaintiff's Constitutional rights as guaranteed under the Fourth and Fourteenth Amendments to the United States Constitution.

157. FLORES, RODRIGUEZ, and DOE 1 are liable for directly participating in the acts described herein and for failing to intervene to protect Hector Torres from the illegal conduct of their fellow officers.

158. As a direct and proximate result of the foregoing, Hector Torres was deprived of his liberty, was subject to great humiliation and physical and emotional pain and suffering, and was otherwise damaged and injured.

## NINTH CLAIM:  ILLEGAL SEARCH

## DEPRIVATION OF RIGHTS UNDER THE FOURTH AND FOURTEENTH AMENDMENTS AND 42 U.S.C. §1983

159. Plaintiffs incorporate by reference the allegations set forth in each preceding paragraph as if fully set forth herein.

160. The conduct and actions of Defendants FLORES and DOE 1, acting under color of

24

law, in entering and searching the residence of Victor J. Torres and Taina Castro, and in seizing the person of Hector Torres, without a warrant, probable cause, consent, or lawful justification or reason, violated the clearly established and well settled federal constitutional rights of Plaintiffs, including the right to be free from unreasonable searches as guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution.

161. The conduct of Officers FLORES and DOE 1 was intentional, willful, malicious, and reckless. Defendants acted without lawful justification or reason, and with deliberate indifference to the constitutional rights of Plaintiffs.

162. As a direct and proximate result of the conduct alleged herein, Plaintiffs were subjected to trauma, fright, fear, humiliation, embarrassment, loss of freedom, harassment, psychological and emotional pain and suffering, and were otherwise damaged and injured.

## CAUSES OF ACTION THAT ACCRUED ON FEBRUARY 3, 2010

## TENTH CLAIM:  FALSE ARREST OF TAINA CASTRO

### DEPRIVATION OF RIGHTS UNDER THE FOURTH AND FOURTEENTH AMENDMENTS AND 42 U.S.C. §1983

163. Plaintiffs incorporate by reference the allegations set forth in each preceding paragraph as if fully set forth herein.

164. The conduct and actions of Defendants TORRES, JANE DOE, KAMNA, OLIVEIRA, and RODRIGUEZ on February 3, 2010, acting under color of law, in arresting and detaining or causing the arrest and detention of Taina Castro without a warrant or probable cause, was done intentionally, maliciously, with a deliberate indifference and/or with a reckless disregard

for the natural and probable consequences of their acts, was done without lawful justification or reason, and was designed to and did cause specific and serious physical and emotional pain and suffering in violation of Plaintiff's Constitutional rights as guaranteed under the Fourth and Fourteenth Amendments to the United States Constitution.

165. TORRES, JANE DOE, KAMNA, OLIVEIRA, and RODRIGUEZ are liable for directly participating in the acts described herein and for failing to intervene to protect Taina Castro from the illegal conduct of their fellow officers.

166. As a direct and proximate result of the foregoing, Taina Castro was deprived of her liberty, was subject to great humiliation and physical and emotional pain and suffering, and was otherwise damaged and injured.

## ELEVENTH CLAIM: EXCESSIVE FORCE AS TO TAINA CASTRO

### DEPRIVATION OF RIGHTS UNDER THE FOURTH AND FOURTEENTH AMENDMENTS AND 42 U.S.C. §1983

167. Plaintiffs incorporate by reference the allegations set forth in each preceding paragraph as if fully set forth herein.

168. The conduct and actions of Sgt. TORRES on February 3, 2010, acting under color of law, in affixing the handcuffs to the wrists of Taina Castro in an excessively tight fashion, and in grabbing or otherwise assaulting and battering Ms. Castro, was excessive and unreasonable, was done intentionally, willfully, maliciously, with a deliberate indifference and/or with a reckless disregard for the rights of Plaintiff, was done without lawful justification or reason, and was designed to and did cause specific and serious physical and emotional pain and suffering in violation of Plaintiff's rights as guaranteed under 42 U.S.C. §1983, and the Fourth and Fourteenth

26

Amendments to the United States Constitution.

169. As a direct and proximate result of the foregoing, Taina Castro was subjected to great physical and emotional pain and suffering, and was otherwise damaged and injured.

## CAUSES OF ACTION THAT ACCRUED IN JUNE, 2010

## TWELFTH CLAIM: ILLEGAL SEARCH & SEIZURE

### DEPRIVATION OF RIGHTS UNDER THE FOURTH AND FOURTEENTH AMENDMENTS AND 42 U.S.C. §1983

170. Plaintiffs incorporate by reference the allegations set forth in each preceding paragraph as if fully set forth herein.

171. The conduct and actions of Defendants DOE Police Officers 7-10, acting under color of law, in seizing and searching the person of Victor J. Torres and Victor M. Torres in or around June of 2010, without a warrant, probable cause, consent, or lawful justification or reason, violated the clearly established and well settled federal constitutional rights of Plaintiffs, including the right to be free from unreasonable searches and seizures of their person as guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution.

172. The conduct of DOE Police Officers 7-10 was intentional, willful, malicious, and reckless, and was done for the purpose of harassing Plaintiffs. Defendants acted without lawful justification or reason, and with deliberate indifference to the constitutional rights of Plaintiffs.

173. As a direct and proximate result of the conduct alleged herein, Victor J. Torres and Victor M. Torres were subjected to trauma, fright, fear, humiliation, embarrassment, loss of freedom, harassment, psychological and emotional pain and suffering, and were otherwise damaged

27

and injured.

## CAUSES OF ACTION THAT ACCRUED ON SEPTEMBER 2, 2010

## THIRTEENTH CLAIM:  FALSE ARREST OF VICTOR M. TORRES

### DEPRIVATION OF RIGHTS UNDER THE FOURTH AND FOURTEENTH AMENDMENTS AND 42 U.S.C. §1983

174. Plaintiffs incorporate by reference the allegations set forth in each preceding paragraph as if fully set forth herein.

175. The conduct and actions of Defendants MARTIN and LASKY on September 2, 2010, acting under color of law, in arresting and detaining or causing the arrest and detention of Victor M. Torres without probable cause, was done intentionally, maliciously, with a deliberate indifference and/or with a reckless disregard for the natural and probable consequences of their acts, was done without lawful justification or reason, and was designed to and did cause specific and serious physical and emotional pain and suffering in violation of Plaintiff's Constitutional rights as guaranteed under the Fourth and Fourteenth Amendments to the United States Constitution.

176. As a direct and proximate result of the foregoing, Victor M. Torres was deprived of his liberty, was subject to great humiliation and serious physical and emotional pain and suffering, and was otherwise damaged and injured.

## FOURTEENTH CLAIM: EXCESSIVE FORCE AS TO VICTOR M. TORRES

### DEPRIVATION OF RIGHTS UNDER THE FOURTH AND FOURTEENTH AMENDMENTS AND 42 U.S.C. §1983

177. Plaintiffs incorporate by reference the allegations set forth in each preceding

28

paragraph as if fully set forth herein.

178.  The conduct and actions of Detectives MARTIN and LASKY on September 2, 2010,

acting under color of law, in grabbing, striking, beating or otherwise assaulting and battering Victor

M. Torres, was excessive and unreasonable, was done intentionally, willfully, maliciously, with a

deliberate indifference and/or with a reckless disregard for the natural and probable consequences

of their acts, was done without lawful justification or reason, and was designed to and did cause

specific and serious physical and emotional pain and suffering in violation of Plaintiff's rights as

guaranteed under 42 U.S.C. §1983, and the Fourth and Fourteenth Amendments to the United

States Constitution.

179. MARTIN and LASKY are liable for directly participating in the acts described herein

and for failing to intervene to protect Victor M. from the illegal conduct of their fellow officers.

180.  As a direct and proximate result of the foregoing, Victor M. Torres was subjected to

great physical and emotional pain and suffering, and was otherwise damaged and injured.


## CAUSES OF ACTION THAT ACCRUED ON OCTOBER 18, 2010

## FIFTEENTH CLAIM:  ILLEGAL SEARCH & SEIZURE

### DEPRIVATION OF RIGHTS UNDER THE FOURTH AND FOURTEENTH
### AMENDMENTS AND 42 U.S.C. §1983

181.  Plaintiffs incorporate by reference the allegations set forth in each preceding

paragraph as if fully set forth herein.

182.  The conduct and actions of Defendants DOE Police Officers 11-15, acting under

color of law, in entering and searching the residence of Victor J. Torres and Taina Castro on

October 18, 2010, and in detaining Victor J. and Victor M. Torres during the search, without a warrant, probable cause, consent, or lawful justification or reason, violated the clearly established and well settled federal constitutional rights of Plaintiffs, including the right to be free from unreasonable searches and seizures as guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution.

183. The conduct of DOE Police Officers 11-15 was intentional, willful, malicious, and reckless, and was done for the purpose of harassing Plaintiffs. Defendants acted without lawful justification or reason, and with deliberate indifference to the constitutional rights of Plaintiffs.

184. As a direct and proximate result of the conduct alleged herein, Plaintiffs were subjected to trauma, fright, fear, humiliation, embarrassment, loss of freedom, harassment, psychological and emotional pain and suffering, and were otherwise damaged and injured.

**SIXTEENTH CLAIM:  MUNICIPAL LIABILITY AS TO ALL CLAIMS**

**LIABILITY OF DEFENDANT CITY OF NEW YORK
FOR CONSTITUTIONAL VIOLATIONS**

185. Plaintiffs incorporate by reference the allegations set forth in each preceding paragraph as if fully set forth herein.

186. The CITY OF NEW YORK directly caused the constitutional violations suffered by Plaintiffs, and is liable for the damages suffered by Plaintiffs as a result of the conduct of the defendant officers. The defendant officers' conduct was a direct consequence of policies and practices of Defendant CITY OF NEW YORK.

187. Upon information and belief, at all times relevant to this complaint Defendant CITY

30

OF NEW YORK knew, from lawsuits, notices of claim, and citizen complaints, that many of its

police officers, including several of the defendant officers, had committed constitutional violations

of the sort alleged herein.

188. The CITY OF NEW YORK knew or should have known of the defendant officers'

propensity to engage in such misconduct. Upon information and belief, prior to December 3, 2009,

the CITY OF NEW YORK was aware of numerous complaints of police misconduct involving one

or more of the defendant officers named herein, including the following:

a. One lawsuit against Defendant LASKY, alleging violations of the Fourth

and Fourteenth Amendment to the United States Constitution, including false arrest;

b. Two lawsuits against Defendant BRIAN MARTIN for false arrest, assault,

battery, and fabrication of evidence. In both cases, as in the instant case, MARTIN allegedly

arrested the plaintiffs for possessing narcotics although the plaintiffs had committed no crime

and no contraband was found;

c. One lawsuit against both Sgt. TORRES and Officer OLIVEIRA for false

arrest and false imprisonment, among other things; and

d. Two other lawsuits against Sgt. TORRES alleging excessive force and

false arrest, among other violations. As in the instant matter, one of the cases involved a

family who was falsely arrested by officers of the 73rd precinct at the instruction of Sgt.

TORRES. The allegations set forth in that complaint bear a striking resemblance to those

contained herein. According to the complaint, the plaintiffs were "Hispanic." TORRES told

the plaintiffs to "shut the fuck up." Sgt. TORRES "ordered the arrest of [plaintiff] for

misdemeanor assault, even though [plaintiff] was the victim of [police officer's] assault

31

rather than the assailant." When a family member, also a plaintiff in the case, went to the 73rd precinct with her 9 year-old child to complain about the assault and false arrest, Sgt. TORRES "threatened – in [the child's] presence – to have [the plaintiff] arrested for assault and have [the child] removed to the custody of the Administration for Children's Services ("ACS") if [the plaintiff] persisted in complaining."

189.  Despite its knowledge of the aforementioned incidents of prior misconduct, the CITY OF NEW YORK failed to take remedial action.

190. Prior to December 3, 2009, the CITY OF NEW YORK developed and maintained policies or customs exhibiting deliberate indifference to the constitutional rights of persons in New York, which caused the violations of Plaintiffs' rights.

191. It was the policy and/or custom of the CITY OF NEW YORK to inadequately and improperly investigate citizen complaints of police misconduct, and acts of misconduct were instead tolerated by the CITY OF NEW YORK.

192. It was the policy and/or custom of the CITY OF NEW YORK to inadequately train, supervise and discipline its police officers, including the defendant officers, thereby failing to adequately discourage further constitutional violations on the part of its police officers. The City did not require appropriate in-service training or re-training of officers who were known to have engaged in police misconduct.

193. As a result of the above described policies and customs, police officers of the CITY OF NEW YORK, including the defendant officers, believed that their actions would not be properly monitored by supervisory officers and that misconduct would not be investigated or sanctioned, but would be tolerated.

32

194. The wrongful policies, practices, customs and/or usages complained of herein, demonstrated a deliberate indifference on the part of policymakers of the CITY OF NEW YORK to the constitutional rights of persons within the city, and were the direct and proximate cause of the violations of Plaintiffs' rights alleged herein.

**WHEREFORE**, Plaintiffs demand the following relief jointly and severally against all of the Defendants:

a.    Compensatory damages in the amount to be determined by a jury;

b.    Punitive damages in an amount to be determined by a jury;

c.    The convening and empanelling of a jury to consider the merits of the claims herein;

d.    Costs and interest and attorney's fees;

e.    Such other and further relief as this Court may deem just and proper.

Dated:    New York, New York
          May 9, 2011

LEA SPIESS, Esq. [LS-7866]
RONALD L. KUBY, Esq. [RK-1879]
Law Office of Ronald L. Kuby
119 West 23rd Street, Suite 900
New York, New York  10011
(212) 529-0223 (t)
(212) 529-0644 (f)

Attorneys for Plaintiffs

33

## VERIFICATION

State of New York    )
                     )     ss.:
County of New York  )

       TAINA CASTRO, being duly sworn, deposes and says as follows:  I have read the

foregoing Complaint and know the contents thereof; the same is true to my own knowledge

except those parts marked "on information and belief," and as to those I believe them to be

true.

Dated:  May 11, 2011

                                                          TAINA CASTRO

SWORN TO AND SUBSCRIBED BEFORE ME
THIS THE 11th DAY OF MAY, 2011.

NOTARY PUBLIC

DAYSI BETANCES
Notary Public - State of New York
No. 01BE6193409
Qualified In Bronx County
My Comm. Expires Sep. 15, 2012

## <u>VERIFICATION</u>

State of New York   )
               )    ss.:
County of New York )

HECTOR TORRES, being duly sworn, deposes and says as follows:  I have read the

foregoing Complaint and know the contents thereof; the same is true to my own knowledge

except those parts marked "on information and belief," and as to those I believe them to be

true.

Dated:  May 11, 2011


                                     HECTOR TORRES


SWORN TO AND SUBSCRIBED BEFORE ME
THIS THE ___DAY OF MAY, 2011.


NOTARY PUBLIC

DAYSI BETANCES
Notary Public - State of New York
No. 01BE6193409
Qualified in Bronx County
My Comm. Expires Sep. 15, 2012

## VERIFICATION

State of New York   )
               )   ss.:
County of New York )

    VICTOR J. TORRES, being duly sworn, deposes and says as follows: I have read the

foregoing Complaint and know the contents thereof; the same is true to my own knowledge

except those parts marked "on information and belief," and as to those I believe them to be

true.

Dated: May 11, 2011

                             _____
                             VICTOR J. TORRES

SWORN TO AND SUBSCRIBED BEFORE ME
THIS THE __11th__ DAY OF MAY, 2011.

_____
NOTARY PUBLIC

DAYSI BETANCES
Notary Public - State of New York
No. 01BE6193409
Qualified in Bronx County
My Comm. Expires Sep. 15, 2012

# **VERIFICATION**

State of New York    )
                     )    ss.:
County of New York   )

     VICTOR M. TORRES, being duly sworn, deposes and says as follows:  I have read the foregoing Complaint and know the contents thereof; the same is true to my own knowledge except those parts marked "on information and belief," and as to those I believe them to be true.

Dated:  May 11, 2011

                                                             VICTOR M. TORRES

SWORN TO AND SUBSCRIBED BEFORE ME
THIS THE 11th DAY OF MAY, 2011.

NOTARY PUBLIC

```
        DAYSI BETANCES
  Notary Public - State of New York
        No. 01BE6193409
     Qualified in Bronx County
  My Comm. Expires Sep. 15, 2012
```